**IN THE COURT OF APPEALS OF IOWA**

No. 16-0064
Filed March 23, 2016

**IN THE INTEREST OF J.P.-R.,**
**Minor Child,**

**J.R., Mother,**
       Appellant.
_____

Appeal from the Iowa District Court for Polk County, Rachael E. Seymour,

District Associate Judge.

A mother appeals from the order terminating her parental rights.

**AFFIRMED ON CONDITION AND REMANDED.**

Agnes G. Warutere of Warutere Law Office, Clive, for appellant mother.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd, Assistant

Attorney General, for appellee State.

ConGarry Williams of the State Public Defender, Des Moines, for minor

child.

Considered by Danilson, C.J., and Vogel and Potterfield, JJ.

**DANILSON, Chief Judge.**

A mother appeals the termination of her parental rights[1] pursuant to Iowa Code section 232.116(1)(h) (2015) (allowing termination where a child three years or younger has been adjudicated a child in need of assistance and has been out of the parent's custody for at least six consecutive months, and cannot be returned to the parent's custody at present).

After the filing of the appeal, the mother filed a motion for stay and for limited remand, asserting the child has Indian heritage on both sides of the child's paternal grandmother's family, and no tribe was given notice of the juvenile proceedings. No evidence has been presented supporting the claim. We deny the motion for stay, and affirm on condition and remand. *See In re R.E.K.F.*, 698 N.W.2d 147, 150-51 (Iowa 2005) (stating "the proper procedure, at least when there is no other evidence the child is an Indian child, is to affirm the termination on the condition that the proper notification be provided").

**I. Background Facts and Proceedings.**

The child was born in December 2012 and was adjudicated a child in need of assistance (CINA) on May 15, 2014, due to domestic violence between the mother and father and substance abuse by both parents. The mother was granted a six-month extension of time to seek reunification following an October 24, 2014 permanency review hearing.

The child was returned to the mother's care on February 15, 2015, for a trial home placement. However, the child was removed from the mother again on March 26 when the police were called to the mother's home. The police

---

[1] The father's rights were terminated as well. He does not appeal.

reported to her probation officer that the mother was intoxicated and the house smelled of marijuana. A June 18, 2015 supervised visit was cancelled. The mother had been in the home before the service provider arrived with the child for a supervised visit and had gotten into a physical altercation with her sister. The mother left but then returned smelling of alcoholic beverages and threatening the people in the home, including the service provider. The mother's visits were thereafter restricted to public places. At an August 4, 2015 permanency review hearing, the mother requested an additional six months for reunification. In mid-August, the mother was hospitalized following a suicide attempt. She began seeing a new therapist on August 25, 2015. Unfortunately, she was arrested on October 1 for operating while intoxicated.

The termination of parental rights hearing was held on October 7 and 8, 2015. At the time of the termination hearing, the child had been out of the mother's custody for at least the last six consecutive months. The mother stated she no longer used marijuana, but admitted to developing a drinking problem following the child's second removal. She admitted she had been drinking alcohol the previous Thursday (October 1). She acknowledged she missed drug screens on June 25, July 2, July 31, August 11, August 25, and September 4, 2015, knowing these drug screens would be considered positive.[2] The mother also acknowledged that during the CINA proceedings she had been unsuccessfully discharged from substance abuse treatment programs for missing classes. She stated she had a new substance abuse evaluation about six weeks prior to the termination hearing, she was attending weekly substance abuse

---

[2] The mother did provide a negative drug screen on July 13, 2015.

classes, and she had recently obtained a sponsor. She believed that she was adequately addressing her alcohol problem "at times" and that if the child were returned to her care, her alcohol problem would not exist because she would not have time to drink. The mother requested an additional six months to seek reunification.

On December 31, 2015, the juvenile court entered an order rejecting the mother's request for this second six-month extension, and terminating the mother's parental rights. The mother appeals.

**II. Scope and Standards of Review.**

We review de novo juvenile court cases involving the termination of parental rights. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We will uphold a termination order if it is supported by clear and convincing evidence of at least one statutory ground under section 232.116(1). *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). "Clear and convincing" proof means we see no "serious or substantial doubt as to the correctness [of the] conclusions of law drawn from the evidence." *Id.* at 706 (citation omitted).

**III. Discussion.**

On appeal, the mother acknowledges the grounds for termination exist under section 232.116(1)(h), but requests additional time to seek reunification. She also asserts the closeness of the parent-child bond weighs against termination of her parental rights.

The child was almost three years of age at the time of the termination hearing and had been out of her mother's care for almost half her life. The mother had received services since the child was five months old and continued

to struggle with unresolved substance abuse, domestic violence, and criminal behaviors. Her claim that all would be well in a short period of time if granted a second extension rings hollow. *See* Iowa Code § 232.104(2)(b) (stating that in order to continue placement for an additional six months, the juvenile court must "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period"); *see also In re A.B.*, 815 N.W.2d 764, 777 (Iowa 2012) ("It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." (citation omitted)). As observed by the juvenile court, "The [mother has] been given every opportunity to engage in services so this child could be returned to [her] care but [has] failed to demonstrate [she is] willing to make necessary changes." We acknowledge the mother has made some efforts but they have been short-lived and not indicative of a desire to change her lifestyle.

The mother also asserts that termination is not required and points to the bond between her and the child. *See* Iowa Code § 232.116(3)(c) (providing that the court need not terminate the relationship between the parent and the child if the court finds "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship"). While we acknowledge there is evidence a bond exists between mother and child, the child's safety, long-term nurturing and growth, and physical, mental, and emotional needs would be better served by termination of

parental rights. *See D.W.*, 791 N.W.2d at 709 (holding that in analyzing this exception, "our consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes [the parent's] inability to provide for [the child's] developing needs"). Additionally, we note the child is placed in a pre-adoptive foster home and is doing well in that placement. We do not find that termination would be detrimental to the child based solely on the parent-child relationship.

However, in a juvenile court proceeding in which the court knows or has reason to know a child is an Indian child, the federal Indian Child Welfare Act (ICWA) requires notice to the child's tribe. 25 U.S.C. § 1912(a). Likewise, the tribal notice provisions of the Iowa ICWA (Iowa Code ch. 232B, (state ICWA)) require the juvenile court to notify the proper Indian tribe whenever it has reason to know that an Indian child may be involved in an involuntary termination. *R.E.K.F.*, 698 N.W.2d at 149 (citing Iowa Code § 232B.5(4)). Because this record does not contain sufficient information to determine if the child is an Indian child under sections 232B.3(6) and 232B.4, we can only conditionally affirm the termination order. *See id.* at 150-51.

We remand the case to the juvenile court for consideration of the child's Indian heritage and whether notice must be sent under the federal and state ICWAs. If the child is not determined to be an Indian child, the juvenile court's original termination order will stand. If the notice requirement has not been satisfied, the juvenile court shall direct the State to send notice concerning the child's tribal membership. If the tribe fails to respond within the appropriate timeframe or replies and determines the child is not eligible for tribal

membership, the termination order will stand. If the tribe responds and intervenes, reversal of the termination order and further proceedings consistent with the ICWA requirements will be necessary. We do not retain jurisdiction.

**AFFIRMED ON CONDITION AND REMANDED.**